

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| RICHARD B. KENDERDINE, SPECIAL ADMINISTRATOR OF THE ESTATE OF VIVIAN C. KENDERDINE; AND VIVIAN C. KENDERDINE, ESTATE OF, DECEASED;<br><br>Plaintiffs,<br><br>vs.<br><br>MARCIA R. SCHMIDT,<br><br>Defendant. | 1:20-CV-01030-CBK<br><br>ORDER |

Plaintiff Richard B. Kenderdine, Special Administrator of the Estate of Vivian Kenderdine, Deceased, sued defendant Marcia R. Schmidt and Roslyn Elevator for wrongful death.[1] The Court held a trial on October 2–3, 2022, and the jury returned a verdict in favor of the defendant. The plaintiff motioned this Court on November 3, 2022, for a new trial. Defendant Marcia R. Schmidt filed her response brief on November 10, 2022, in resistance to the motion. Mr. Kenderdine replied to the defendant's brief on November 15, 2022, making this matter ripe for adjudication.

---

[1] Roslyn Elevator was dismissed as a party to this lawsuit because based on the evidence presented at trial, under South Dakota law, the Elevator could not be held liable for Ms. Schmidt's actions.

1

I.   **Background**

This trial arose from a fatal collision involving Marcia R. Schmidt and Vivian C. Kenderdine. On June 11, 2019, Ms. Schmidt was driving her truck south on Interstate-29 and rear-ended Ms. Kenderdine who was riding her motorcycle. Ms. Kenderdine died immediately as a result of the collision. Before the crash, Ms. Schmidt was driving with her cruise-control set at approximately 80 miles per hour, which was the posted speed limit, in the right lane of the two-lane highway. Ms. Kenderdine was also traveling southbound on the highway with two of her friends on the way to an all-women motorcycle rally in Kansas. Ms. Tamara Henninger led the three women in a "staggered" formation, followed by Ms. Mary Grund. Ms. Kenderdine was riding last in the series of the three motorcyclists. At some point that morning, the three women pulled over and stopped beneath an overpass for several minutes to discuss where to stop for fuel and where they wanted to go to lunch. When they finished talking, the group set out to continue in the same formation they were riding in before they stopped on the shoulder. Ms. Henninger pulled out into the right lane of the highway first, followed by Ms. Grund, and Ms. Kenderdine followed last. Shortly after the three motorcyclists merged back onto the highway, Ms. Schmidt hit Ms. Kenderdine's motorcycle from behind with the front of her truck. Ms. Kenderdine was thrown off the motorcycle and passed away at the scene of the accident.

Ms. Schmidt admitted throughout the trial that she never saw Ms. Kenderdine until the last second. South Dakota State Trooper John Berndt testified at trial that the data retrieved from Ms. Schmidt's car showed that approximately a half second before the collision she hit the brakes and attempted to steer the truck away to avoid the crash. Ms. Schmidt's defense to liability focused on Ms. Kenderdine's claimed contributory negligence. The general thrust of the contributory negligence defense was that Ms. Kenderdine did not look behind her before merging back onto the highway and essentially pulled out almost directly in front of Ms. Schmidt's truck. But either a missed expert witness disclosure deadline or an inexplicable trial strategy meant that Ms.

Schmidt could not use Trooper Berndt as an accident reconstruction expert witness.[2] Instead, Berndt's testimony was limited by the Court to the facts of the accident scene rather than the conclusions in his written report. This limitation precluded Berndt from testifying or producing any evidence regarding Ms. Kenderdine's speed at the time of the collision or his belief as to the ultimate cause of the collision. The defense produced evidence of a minimum speed limit (40 miles per hour) on the highway as well as photos of signs near the accident that stated stopping on the shoulder is prohibited except in cases of emergency. Ms. Grund was questioned about Ms. Kenderdine's motorcycle being found in second gear, but she had no personal knowledge regarding what gear the motorcycle was in after the accident. Neither Ms. Grund nor Ms. Henninger saw the collision happen.

At trial, the plaintiff called Ms. Schmidt, Trooper Berndt, Trooper Cory Nordquist, Ms. Grund, Ms. Henninger, and Richard B. Kenderdine, Ms. Kenderdine's husband, as witnesses. The defense only called Ms. Schmidt, who testified again briefly.[3] The jury returned its verdict in favor of the defendant. It found that Ms. Schmidt was negligent

---

[2] After failing to disclose Trooper Berndt in their discovery as an expert witness, the defense seemingly attempted to characterize Berndt as a non-retained expert who would be subject to less strict disclosure requirements than a retained expert witness and therefore permitted to testify during the trial. See Gruttemeyer v. Transit Authority, 31 F.4th 638, 644 (8th Cir. 2022) ("Under Rule 26, non-retained experts . . . are subject to less stringent disclosure requirements than a retained expert."); see also Vanderberg v. Petco Animal Supplies Stores, Inc., 906 F.3d 698, 702 (8th Cir. 2018) ("[P]arties must disclose the identity of non-retained experts who may testify at trial and disclose 'the subject matter on which the witness is expected to present' expert opinion testimony and 'a summary of the facts and opinions to which the witness is expected to testify.'" (quoting FED. R. CIV. P. 26(a)(2)(C)). The defense argued that Trooper Berndt was properly disclosed as a non-retained expert witness because he was listed as a witness in discovery, the plaintiff had the opportunity to depose him, and he would testify about conclusions in his police report as to which the plaintiff had full knowledge. The Court ruled that Trooper Berndt could testify about facts of the accident scene, but did not qualify him as a non-retained expert witness. (Doc. 48).

[3] Certain witnesses' testimony was presented through recorded depositions. Ms. Schmidt gave live testimony and testimony through her recorded deposition, and Ms. Grund and Ms. Henninger gave testimony through their recorded depositions.

3

and that her negligence was a legal cause of Ms. Kenderdine's death. It also found that Ms. Kenderdine was negligent, that her negligence was a legal cause of her death, and that Ms. Kenderdine's negligence was more than slight in comparison to Ms. Schmidt's negligence.

## II.  Standard of Review

When a court does not grant a motion for judgment as a matter of law made under Rule 50(a) of the Federal Rules of Civil Procedure, the movant can file a renewed motion for a judgment as a matter of law within 28 days after the entry of judgment under Rule 50(b) and may include an alternative or joint request for a new trial under Rule 59. See FED. R. CIV. P. 50(b). When resolving a motion for a judgment as a matter of law under Rule 50, the Court determines whether there is sufficient evidence to support the jury's verdict. The Court must view the evidence in a light most favorable to the prevailing party and give great deference to the jury's verdict. See Howard v. Missouri Bone and Joint Center, Inc., 615 F.3d 991, 995 (8th Cir. 2010); Anderson Marketing, Inc. v. Maple Chase Co., 241 F.3d 1063, 1065 (8th Cir. 2001). The Court "must not engage in a weighing or evaluation of the evidence or consider questions of credibility." Howard, 615 F.3d at 995 (cleaned up). The Court will not reverse a jury's verdict unless it finds that "no reasonable juror could have returned a verdict for the non-moving party." Anderson Marketing, Inc., 241 F.3d at 1065.

A motion for a new trial is governed by Rule 59 of the Federal Rules of Civil Procedure.[4] "The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). Contrasted with a judgment as a matter of law that focuses on the sufficiency of the evidence, when evaluating a

---

[4] On appeal, the Eighth Circuit reviews a district court's decision to grant or deny a motion for a new trial for abuse of discretion. Michigan Millers Mut. Ins. Co. v. Asoyia, Inc., 793 F.3d 872, 878 (8th Cir. 2015) ("We will only reverse the denial of a new trial motion for an abuse of discretion."). A motion for judgment as a matter of law, on the other hand, is reviewed *de novo*. Id. at 877.

4

motion for a new trial the Court "can rely on its own reading of the evidence—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992). But when the Court weighs evidence under Rule 59, it "should only grant a new trial to avoid a miscarriage of justice." See Howard, 615 F.3d at 995; see also Structural Polymer Group, Ltd. v. Zoltek Corp., 543 F.3d 987, 991 (8th Cir. 2008) ("A new trial motion premised on a dispute about the strength of the supporting proof should be granted only if the verdict is against the weight of the evidence and allowing it to stand would result in a miscarriage of justice.") (cleaned up). This standard, however, "is not boundless," and the Court is not "free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." White, 961 F.2d at 780 (quoting Fireman's Fund Ins. Co. v. Aalco Wrecking Co., 466 F.2d 179, 186 (8th Cir. 1972)).

### III. Discussion

The plaintiff's motion for a new trial argues the jury's verdict that Ms. Kenderdine was contributorily negligent is against the weight of the evidence. In turn, Ms. Schmidt contends that evidence produced at trial showing that Ms. Kenderdine's motorcycle was found in second gear along with evidence suggesting that Ms. Kenderdine violated state traffic laws provides an ample basis for the jury's finding of contributory negligence. The plaintiff did not renew the motion for judgment as a matter of law, so the Court will only apply the standard for granting a new trial under Rule 59 of the Federal Rules of Civil Procedure.

The plaintiff's complaint asserts a wrongful death claim against Ms. Schmidt based on a theory of negligence. South Dakota law governs this case because the accident happened in South Dakota and the Court's jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 72–73 (1938). Under South Dakota law, wrongful death actions allow for recovery of damages where a defendant caused "the death or injury of a person . . . by a wrongful act, neglect,

5

or default." See Lindholm v. BMW of N. Am., LLC, 202 F. Supp. 3d 1082, 1100 (D.S.D. 2016) (quoting SDCL § 21–5–1). A wrongful death action recovery hinges on the showing of an underlying tort, such as negligence or strict liability. Id. Here, the plaintiff claimed that Ms. Schmidt acted negligently while operating her truck.

Under South Dakota law, there are three elements to a negligence claim: (1) a duty on the part of the defendant; (2) a breach of that duty; and (3) a legal or proximate injury resulting from that breach of duty. Esterling v. McGehee, 102 F. Supp. 3d 1116, 1119 (D.S.D. 2015) (citing State Auto Ins. Cos. v. B.N.C., 702 N.W.2d 379, 386 (S.D. 2005)). A contributorily negligent plaintiff is barred from recovering damages where her own negligence was "more than slight" in comparison to the negligence of the defendant. See Wood v. City of Crooks, 559 N.W.2d 558, 559–60 (S.D. 1997); SDCL § 20–9–2. "Slight" in the context of contributory negligence is defined as "small of its kind or in amount; scanty; meager." Wood, 559 N.W.2d at 560. The Supreme Court of South Dakota has made clear that the question of whether a plaintiff was contributorily negligent is ordinarily a question for the jury. See id. ("Whether [the plaintiff] was contributorily negligent was a question of fact properly submitted to the jury."); Zens v. Harrison, 538 N.W.2d 794, 796 (S.D. 1995) ("Determining negligence has always been the jury's function."). Although contributory negligence can become a question of law when "reasonable men can draw but one conclusion from facts and inferences," that was not the case here. Luther v. City of Winner, 674 N.W.2d 339, 348 (S.D. 2004) (quoting Mitchell v. Ankney, 396 N.W.2d 312, 313 (S.D. 1986)).

Ms. Schmidt's contributory negligence defense primarily focused on the question of proximate cause and whether any of Ms. Kenderdine's actions were a legal cause of the collision. "Proximate cause is 'an immediate cause which, in natural or probable sequence, produces the injury complained of.'" Cooper v. Brownell, 923 N.W.2d 821, 824 (S.D. 2019) (quoting Martino v. Park Jefferson Racing Ass'n, 315 N.W.2d 309, 314 (S.D. 1982)). "Such cause need not be the only cause of a result. It may act in combination with other causes to produce a result." Howard v. Bennett, 894 N.W.2d 391, 395 (S.D. 2017) (quoting Hamilton v. Sommers, 855 N.W.2d 855, 867 (S.D. 2014)).

But proximate cause cannot be "based on mere speculative possibilities or circumstances and conditions remotely connected to the events leading up to an injury." Cooper, 923 N.W.2d at 824 (quoting Martino, 315 N.W.2d at 314). "To be actionable, the cause of harm must be a substantial factor in bringing about the harm." Mulder v. Tague, 186 N.W.2d 884, 887 (S.D. 1971)).

As an initial matter, statements made by both parties during the trial regarding Ms. Kenderdine's motorcycle being found in second gear were not admissible evidence at trial and will not be considered in the Court's ruling on this motion. As previously stated, the defense was not allowed to use Trooper Berndt's report or question him about his findings during the trial to show that Ms. Kenderdine was driving too slowly, leading to the inference that she caused the accident. But both parties referenced the report during Ms. Grund's testimony. Ms. Grund had the following exchange during her direct examination with plaintiffs' counsel:

> Question: And I think somewhere in his report he notes – the investigating officer – he noted that he found Ms. Vivian Kenderdine's motorcycle to be in second gear, and that was after a high-speed collision. I take it, again, you wouldn't have any idea of what – what gear Ms. Kenderdine's motorcycle would have been in because you never saw her and you don't know fast she was travelling; correct?
>
> Answer: Correct.

The following exchange between Ms. Grund and defense counsel during her cross examination was produced at trial:

> Question: [Plaintiff's counsel] mentioned that – as part of the investigation that Vivian Kenderdine's motorcycle was found in second gear after the incident. Do you recall that?
>
> Answer: I remember him stating that.
>
> Question: Yeah. Did you – did you go check her motorcycle as to what gear it might be in?
>
> Answer: No.

The plaintiff argues, correctly, that Ms. Grund's testimony does not establish that Ms. Kenderdine's motorcycle was found in second gear or that it was in second gear at the time of the collision. As shown by both direct and cross examinations, Ms. Grund had no

7

personal knowledge of what gear Ms. Kenderdine's motorcycle was found in and the reference to second gear was not witness testimony. The jury was instructed that questions by the parties' lawyers are not evidence. Jury Instruction No. 5 states:

> Certain things are not evidence. I shall list those things again for you now:
>
> 1. Statements, arguments, questions, and comments by lawyers representing the parties in the case are not evidence. . . .

Because there was no admissible evidence produced during the trial regarding what gear Ms. Kenderine's motorcycle was found in after the collision, the Court will not consider that alleged fact when ruling on this motion for a new trial.

The jury's verdict that Ms. Kenderdine was contributorily negligent, however, accurately reflects the weight of the evidence admitted at trial. The jury was instructed that it could find that either Ms. Schmidt or Ms. Kenderdine was negligent if they violated a series of safety laws, but only if the negligent conduct was a proximate cause of Ms. Kenderdine's death. See Jury Instruction No. 14. One of those safety laws states that no person may drive onto or off of a controlled access roadway except at designated entrances and exits. Another stated that a driver of a vehicle using a public highway has a duty to exercise ordinary care at all times to avoid placing the driver or others in danger and to exercise ordinary care to avoid an accident. During the trial, it was undisputed that the three women both stopped on the shoulder of the highway and subsequently reentered the highway—and did neither at a designated entry or exit point.

Ms. Henninger and Ms. Grund's testimony could be viewed to suggest that Ms. Kenderdine failed to use ordinary care when merging onto the highway. When Ms. Henninger was asked if she accelerated on the shoulder before merging onto the highway, she answered, "Oh yes." When asked again later in her deposition about merging onto the highway, Ms. Henninger said that although she did not know how far she drove on the shoulder, she accelerated to a safe speed before merging onto the highway, and she checked her rearview mirror before doing so. But when asked if Ms. Grund or Ms. Kenderdine accelerated on the shoulder before merging onto the highway, Ms. Henninger said that "she could not answer for them."

When Ms. Grund was asked a similar question about whether she accelerated on the shoulder before merging onto the highway, she answered, "I did not." She testified that she did not remember exactly what she did, but she assumed that she would have used her turn signal, taken a minimal amount of time to get safely on the road, and accelerated very quickly. When asked if she looked in the rearview mirror to see if there were any vehicles on the road before accelerating, she responded, "No." She said that she physically turned her head to look and see if there was oncoming traffic and that she saw headlights "a long ways away" in the distance. She said that she turned her blinker on before she started moving, and that she traveled "maybe 20 feet" or a very short distance on the shoulder before entering the highway. Ms. Grund testified she might have been going 20 or 30 miles per hour when she merged onto the highway.

Given that Ms. Kenderdine was riding behind Ms. Grund, it is reasonable to infer that she acted similarly by not accelerating on the shoulder like Ms. Henninger did or merged onto the highway in what could reasonably be interpreted as an unsafe manner or unsafe speed like Ms. Grund did.[5] Either of those actions, taken separately or in tandem, could reasonably be interpreted a proximate cause of the accident, leading the jury to find that Ms. Kenderdine was also negligent. Under South Dakota law, it is not difficult to meet the standard of "more than slight" related to the question of contributory negligence. A reasonable person could have interpreted the evidence presented related to Ms. Kenderdine's actions as more than a "scanty" or "meager" contribution to the collision in comparison to Ms. Schmidt's negligence. Based on the evidence presented during the

---

[5] The plaintiff supports its argument by quoting the Court's position that Ms. Kenderdine's speed was not a proximate cause of negligence. But this case involves two separate instances of negligence. Of course, Ms. Kenderdine's speed is irrelevant to whether Ms. Schmidt acted negligently while driving her truck on the highway because Ms. Schmidt repeatedly said that she never saw Ms. Kenderdine until a fraction of a second before the crash. The same cannot be said for the question of whether Ms. Kenderdine contributed by operating her motorcycle negligently when merging onto the highway after stopping beneath the overpass.

9

trial, it cannot be said that allowing the verdict to stand amounts to a miscarriage of justice allowing the Court to overturn the jury's decision.

The South Dakota cases cited by the plaintiff in his brief regarding a presumption of due care for persons killed in an automobile accent do not change the outcome of this motion for a new trial. Although the series of cases are binding South Dakota law, the plaintiff never requested that this specific presumption be included in the jury instructions. The instruction might have been enough to sway the jury, but it was neither requested nor given. The plaintiff also does not argue that the presumption should have been included in the jury instructions as a basis for a new trial in its motion. Moreover, that presumption does not contradict anything that was included in the instructions provided to the jury at trial. It is a standard presumption of due care applied to a vehicle accident that potentially involves contributory negligence and "may be rebutted by direct or circumstantial evidence to the contrary." Theunissen v. Brisky, 438 N.W.2d 221, 224 (S.D. 1989). As discussed above, a reasonable jury could have interpreted the evidence presented at trial as showing that Ms. Kenderdine acted negligently and her contribution to the crash was more than slight.

Were I the finder of fact, I might well have found for the plaintiff—but I was not the finder of fact. I have great respect for juries and our system. In the more than 27 years I have served on the bench, I have set aside one jury verdict. That was in a case involving the Internal Revenue Service and a bank. I set aside a verdict for the bank and was affirmed on appeal by the United States Court of Appeals for the Eighth Circuit.

## IV. Conclusion

The outcome of this collision is tragic, and the jury's verdict is unfortunate in a case where one party suffered the loss of life and the other party sustained minor damage to their vehicle. But the bar to overturn a jury's verdict is high, and the plaintiff has not made a sufficient showing to do so in this case.

Now, therefore,

IT IS ORDERED that plaintiff Richard B. Kenderdine's motion for a new trial, Doc. 73, is denied.

DATED this 17th day of December, 2022.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge